IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| United States of America, | ) | CRIMINAL NO. 3:04-330-CMC |
| | ) | |
| v. | ) | **OPINION and ORDER** |
| | ) | |
| Shawn Sadler, | ) | |
| a/k/a "Tangulifu M. Barber," | ) | |
| a/k/a "Carlos Watts," | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter came before the court on limited remand from the Fourth Circuit Court of Appeals. Pursuant to the remand Opinion issued November 4, 2011, this court conducted an evidentiary hearing on January 3, 2012 and makes the following factual findings.

**BACKGROUND**

On November 6, 2007, Defendant was convicted following trial by jury of involvement in a conspiracy to distribute 5 or more kilograms of cocaine. He was sentenced to 240 months' imprisonment, and thereafter filed a timely Notice of Appeal. On September 9, 2009, the Fourth Circuit Court of Appeals affirmed Defendant's conviction via unpublished per curiam opinion. *See United States v. Sadler*, 344 F. App'x 861 (4th Cir. 2009). Defendant did not file a petition for writ of certiorari to the United States Supreme Court.

On May 21, 2010, Defendant filed a "Motion to Dismiss the Indictment" in this court. ECF No. 520.[1] On May 25, 2010, this court notified Defendant that it would treat the motion as a motion for relief under 28 U.S.C. § 2255, and that he could either amend it to assert all claims he wished

---

[1]Because Defendant is incarcerated, he benefits from the "prison mailbox rule," as delineated in *Houston v. Lack*, 487 U.S. 266 (1988). Defendant's motion was received for filing by the Clerk of Court on May 24, 2010.

1

to pursue under § 2255, or withdraw it without prejudice. Defendant filed an amendment to the motion on July 2, 2010. On September 27, 2010, the Government moved for summary judgment, which this court granted by order of February 8, 2011. Defendant thereafter filed a timely Notice of Appeal, resulting in the current limited remand.

### EVIDENTIARY HEARING

On January 3, 2012, the court conducted an evidentiary hearing. Defendant was present, represented by counsel Kathy Evatt, Esquire. The parties offered witnesses and exhibits, and the court thereafter took this matter under advisement to await a further piece of evidence to be supplied by the Government in response to Defendant's testimony.

Defendant was represented at trial and on appeal by William W. Watkins, Esquire, of the South Carolina Bar. Watkins has been on the Court's Criminal Justice Act ("CJA") panel of attorneys for appointment in criminal cases since 2004. As relates to this matter, Watkins testified that he received the Opinion of the Fourth Circuit Court of Appeals affirming Defendant's conviction on September 9, 2009 via electronic mail (e-mail). Watkins typed a letter to Defendant that same day notifying him of the Fourth Circuit's decision, which Watkins mailed to Defendant either on September 9 or 10, 2009. Watkins indicated in the letter that Defendant had a right to

> petition the United States Supreme Court in this matter. Based on the [Fourth Circuit's] opinion and my prior research on your case, I believe a petition to the Supreme Court would be frivolous. The Supreme Court, in my opinion, would not accept a writ of certiorari. Because I believe it would be frivolous, I would be required to file a Motion to be relieved (withdraw) as Counsel if you write me and ask me to file a Petition. If you do not write me, I will not file a petition for writ of certiorari.

Gov't Ex. 2 at 1-2. The letter also indicates that Defendant had ninety (90) days from the date of decision by the Fourth Circuit to "petition the Supreme Court in this matter[,]" and that he (Watkins) estimated that this date would be December 8, 2009. *Id.* Watkins enclosed a copy of the Fourth

2

Circuit's Opinion with this letter and affixed the proper postage to the envelope. The envelope was addressed to Defendant at "Coleman Low FCI, U.S. Penitentiary, P.O. Box 1033, Coleman Florida 33521." *Id*. Watkins testified that he used this address to correspond with Defendant throughout the appeal process, and no correspondence, nor the appellate briefs and transcripts, was ever returned to him.

On November 4, 2009, Watkins again wrote Defendant. The letter stated that "I have not heard from you in writing that you do not want to file a petition for a writ of certiorari with the U.S. Supreme Court." Gov't Ex. 3 at 1. The letter again noted December 8, 2009, as the deadline for petitioning the Supreme Court. *Id*. Watkins affixed the proper postage prior to its mailing.

Watkins testified that he did not mark either of these letters "Legal Mail" or "Open Only in Presence of Inmate" because the letters did not contain sensitive attorney-client correspondence and he did not wish to delay delivery of the material to Defendant.

On November 18, 2009, Watkins received a telephone call from Defendant's sister. Watkins' contemporaneous notes on his time sheet indicate that he had a "t/c with Client's relative in Florida re visit with client and do not file cert." Gov. Ex. 4 at 3. He thereafter closed his file and submitted his voucher for payment to the Court of Appeals on December 29, 2009.

Watkins indicated that in mid-February 2010, he was again contacted by Defendant's sister, Kenya D'Oyen. As a result of this contact, Watkins sent certain information to Defendant, with a copy sent to Ms. D'Oyen, as indicated by letter dated February 19, 2010. Gov't Ex. 6. Watkins could not specifically recall the material he provided to Defendant, but he believed it may have been copies of certain publicly-available material from the record, such as the charging document. Watkins mailed this material to Defendant at the same "Post Office Box 1033" address, and it was not returned.

Michael Pineiro, a Supervising Corrections Officer Specialist at Coleman FCI, testified by videoconference. Pineiro supervises the mailroom at Coleman FCI, which is a Bureau of Prisons (BOP) facility made up of five (5) separate institutions. Pineiro testified that incoming inmate mail is checked against the inmate's BOP "register number" to determine in which of the five institutions the inmate may be housed. If mail arrives at one institution and an inmate is housed in another of the Coleman FCI facilities, it is routed to the correct facility.

Pineiro also testified that unless incoming mail is marked on the exterior of the envelope as "Legal Mail," it is not logged in by BOP personnel. Rather, even if an envelope appears to have been sent by an attorney, unless the correspondence is marked "Open only in Presence of Inmate," the mail is opened for security purposes and to check for contraband, and then delivered to the inmate's Unit Team for delivery to the inmate. Pineiro testified that on September 14, 2009, Defendant received mail marked as "Legal Mail" from the Clerk's Office at the Fourth Circuit Court of Appeals. Pineiro testified that the mail was logged in and delivered to Defendant's Unit Team for delivery to Defendant. Finally, Pineiro testified that FCI Coleman Low has a mailing address of Post Office Box 1031, Coleman, Florida 33521.

Defendant testified that his birth name is "Tangulifu Barber" and that "Shawn Sadler" is an alias. Defendant indicated that since conviction, he has always been housed at FCI Coleman Low.[2] Defendant testified that he received the letter from the Clerk's Office at the Fourth Circuit Court of Appeals, enclosing a copy of the Opinion and other documents relating to the filing of a petition for writ of certiorari. Gov. Ex. 5. Defendant denied, under oath, receiving any correspondence from or having any contact with Watkins after the appeal was filed. He testified that at some point between his receipt of the Fourth Circuit's Opinion-related documents and December 2009, he

---

[2] BOP records reflect Defendant is incarcerated under the name "Shawn Sadler."

4

attempted to contact Watkins and Assistant United States Attorney Nancy Wicker "of the Probation Office" through "TRULINCS," a BOP e-mail program allowing inmates to correspond via e-mail with certain individuals who accept their requests to correspond. Defendant testified that he never heard back from the e-mail request he sent to Watkins, but that Wicker accepted his request to correspond with her and that they exchanged four e-mails.

When asked what prompted him to contact Wicker, Defendant testified "because I had not heard from my lawyer." Defendant testified that once Wicker accepted his request to correspond, he asked in an e-mail that Wicker contact Watkins on his (Defendant's) behalf, and that Wicker's reply was for him to contact Watkins separately.[3]

---

[3] In response to Defendant's testimony that he corresponded via e-mail with Wicker, Ms. Wicker submitted an affidavit. ECF No. 556 (filed Jan. 6, 2012). Wicker averred that she "checked both my existing electronic files (one for Mr. Sadler's trial, and one for his appeal), as well as my deleted e-mails, which are archived by the Department of Justice for five years. None of these files produced any evidence of any e-mail correspondence with Mr. Sadler." Aff. of Nancy C. Wicker at ¶ 3. Wicker also outlined her standard practice regarding when she is contacted by a defendant who is represented by counsel. Wicker affirmed that

> [w]hen a defendant sends me a letter, I do not read it. I immediately contact his attorney and ask his attorney what he would like for me to do with the letter. . . . As such, if Mr. Sadler had communicated with me via e-mail, I would have immediately contacted his attorney, Mr. Watkins, about this communication. I do not recall ever contacting Mr. Watkins during this time period about any communications between Mr. Sadler and myself.

*Id.* at ¶ 6.

After receiving Wicker's affidavit, and based on the fact that Defendant had initially testified that Ms. Wicker worked for the "Probation Office," the court contacted United States Probation Officer Cecile Makhuli, who prepared Defendant's Presentence Report (PSR). Ms. Makuli confirmed that Defendant contacted her in October of 2008, inquiring about issues relating to prior convictions and ordering transcripts. She thereafter provided copies of the e-mail correspondence to this court and counsel for Defendant and the Government. These e-mails, dated well before any decision on Defendant's appeal, are attached to this Order.

Defendant denied having told his sister (who he testified had both visited him and had talked with him on the telephone) to contact Watkins and tell him that he (Defendant) did not want to file a petition for writ of certiorari. Defendant maintained that he did request that his sister contact Watkins in February 2010 to obtain information about ordering transcripts which Defendant did not already have, specifically, that he wanted her to obtain copies of transcripts relating to his co-defendant Miesha Smith. Defendant testified that Watkins' response was the cost would likely be $400 to $500 dollars, and that a transcript would need to be ordered from the court reporter. When asked by this court when he had received copies of transcripts in the case, Defendant testified that he had received them prior to the appeal. On cross-examination by the Government, Defendant admitted that he had two sets of transcripts and that Watkins had sent the transcripts to him after the appeal was filed.

Court records reflect that transcripts were not ordered by counsel until after the appeal was filed, and no transcript was filed until at least September 8, 2008. *See* ECF No. 491 (transcript of suppression hearing held October 23, 2007).

Defendant testified that he did not understand what "certiorari" was and that he wanted to file a petition for writ of certiorari once he knew what it meant.

**FINDINGS**

Based on the testimony presented and the evidence introduced by the Government, the court finds that Watkins complied with his responsibilities as required by Fourth Circuit Internal Operating Procedure (IOP) 46.3 and its Plan in Implementation of the Criminal Justice Act of 1964 by sending Defendant two letters advising him of his right to file a petition for writ of certiorari. Other than denying receipt of Watkins' letters, Defendant presented no evidence to contradict Watkins' testimony that he prepared and mailed the two letters to Defendant wherein he notified Defendant of his right to seek review in the United States Supreme Court. While Watkins may not

6

have used the precise correct mailing address, the letters were sent to Coleman where Pineiro testified all incoming mail is checked against the inmate's BOP register number to determine in which of five institutions the inmate is housed and routed to the correct facility.  None of the mail Watkins sent to Defendant during or after the appeal process was ever returned to Watkins.  Moreover, Defendant acknowledged receipt and possession of copies of transcripts which were ordered by Watkins as a part of the appeal process, which Watkins sent to the same address.

The court concludes that Defendant was not credible and testified falsely when he stated he did not receive the letters.  This finding of lack of credibility is based on (1) the court's observation of Defendant's demeanor when questioned about having received transcripts (he initially denied and later conceded having received them, and gave illogical responses about the timing of the receipt); (2) Defendant's unsupported and contradicted testimony about efforts he made to contact Watkins after receiving the Fourth Circuit's Opinion; and (3) Defendant's sister's clear contact with Watkins to relay that Defendant did not wish to file a petition for certiorari.

### CONCLUSION

Having made the above factual findings, the court hereby directs the Clerk to file the Government's Exhibits introduced on January 3, 2012, as a separate document for review by the Court of Appeals, and to attach a copy of the e-mails between Defendant and Ms. Makhuli to the Exhibits.  The Clerk shall forward a copy of this Order and the Exhibits to the Fourth Circuit Court of Appeals.

**IT IS SO ORDERED**.

s/ Cameron McGowan Currie
CAMERON McGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
January 18, 2012